ADSIT v. IDE.

CANCELLATION OF INSTRUMENTS — ASSIGNMENT OF MORTGAGE —
UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.

In an action by the administrator of a deceased person to re-
cover the proceeds of a mortgage transferred by decedent to
defendants in his lifetime, on the ground that the decedent
was mentally incompetent at the time of the transfer, and
that the same was procured by undue influence, evidence ex-
amined, and *held*, sufficient to support a verdict for plaintiff.

Error to Kent; Perkins, J. , Submitted October 22,
1907. ( Docket No. 45.) Decided December 10, 1907.

Case by Allen C. Adsit, administrator of the estate of
Rufus Corkins, deceased, against Daniel K. Ide and
George Corkins for money obtained of plaintiff's intestate
by fraud and undue influence. There was judgment for
plaintiff, and defendants bring error. Affirmed.

*Dunham & Dunham*, for appellants.

*Smedley & Corwin*, for appellee.

MONTGOMERY, J. Plaintiff, as administrator of the
estate of Rufus Corkins, deceased, brings this action to
recover the proceeds of a mortgage transferred by Rufus
Corkins, in his lifetime, to the defendants. The plaintiff's
claim is that Rufus Corkins was at the time of this trans-
fer mentally incompetent to transact business of that im-
portance, and also that defendants exerted undue influ-
ence in securing the transfer. The jury found a verdict
in favor of the plaintiff. Defendants made a motion for
a new trial on various grounds:

1. Because the verdict is contrary to law.
2. Because the verdict is against the great weight of the
evidence.
3. Because the court erred in not directing for the de-

fendants a verdict of no cause of action when plaintiff had closed his case.

4. Because the court erred in not directing a verdict for the defendants after all of the testimony in said cause was introduced.

The circuit judge gave his reasons for denying a new trial, stating that the verdict was not contrary to law if the jury found that the deceased was either mentally incompetent or that undue influence had been exerted by defendants, that the weight of the evidence was left to the jury to determine, as it should have been, and that he was not able to find that the jury had reached a wrong conclusion, and that the verdict was not contrary to the evidence, as there was some evidence on both points submitted to them.

The defendants bring error, and assign as error the refusal of the court to direct a verdict for the defendants at the close of the plaintiff's case, also the refusal to direct a verdict at the close of all the testimony, and the order overruling defendants' motion for a new trial for the reasons given by the circuit judge. The whole case in this court narrows down to the question of whether there was testimony sustaining the plaintiff's claim legally tending to show the mental incapacity of decedent or the undue influence exerted by the two defendants, and whether such testimony was, when weighed against the testimony of the defendants, of sufficient force to justify the verdict, or whether, on the other hand, the verdict was so clearly against the weight of the testimony as to indicate caprice on the part of the jury and to call upon the circuit judge to vacate the verdict upon that ground.

There are certain salient facts in the case which may be stated: Up to April, 1903, Rufus Corkins was the owner of a farm in Wyoming township, Kent county. This farm consisted of 46 acres with two dwelling houses thereon. Some years previous he had given to each of his children, in land or money, the equivalent of $1,000, consisting in most cases of 40 acres of land. Some

years prior to 1903 all the children of decedent had united in a petition to the probate court for the appointment of a guardian for him. This was explained by defendants' testimony by the statement that this was done to protect him from the alluring wiles of a widow of doubtful repute. But the fact remains that he was 81 years old at the time of the transfer, almost wholly blind, and quite feeble. A sale of his farm was negotiated, and it appears that there were present, when the transfer was made, all of his living children; two grandchildren, sons of a deceased son, were not present but were represented by their mother. On this sale deceased received $7,000 for his 46 acres, and of this he divided $5,000 among his four children and the two grandchildren, retaining $2,000 for himself, in addition to $300 deducted from George's share to cover an indebtedness owing from George, so that after deducting the commission on the sale the old gentleman had $400 and received a mortgage of $1,800. This mortgage was made to Jacob Steketee as trustee. The $400 was also left in his hands as trustee to be paid over for the benefit of decedent. The question of the care of the old gentleman was discussed at this time, and it was understood that Mr. Steketee, as trustee, would allow no more than $1 a day to whatever one or ones of the children should care for Mr. Corkins. He lived part of the time with the Ides, Mrs. Ide being a daughter, and part of the time with George Corkins. This arrangement continued until August 19, 1904, when the mortgage was transferred, first by Steketee to the decedent, and on the same occasion by decedent to defendants, and by them soon after sold. The only consideration for the mortgage was an agreement on the part of the two defendants to care for the decedent during his lifetime. The other children were not consulted on this occasion.

There was testimony from which the jury might have inferred that an effort was made to convince decedent that his other children would not care for him, and, as we

150 MICH.—24.

think, abundant testimony from which the jury might have found an overreaching on the part of these defendants. Seven years prior to this all the children had joined in a sworn petition saying of decedent:

"He is old and weak minded. He is nearly blind. He fell from a wagon a year ago and injured his head, and is troubled yet on account of it. He tries unreasonably to dispose of his property, both real and personal. He talks of and threatens to get married."

When this testimony is taken in connection with the fact that when the important business of disposing of his property was in hand all the heirs or their representatives gathered and took part, and when it is considered that the decedent in his enfeebled state of body and mind was in the custody and under the influence of these two defendants more than a year, and that apparently departing from an understanding which was had at the time of the deed of the farm that $1 a day would be sufficient compensation for his care, the failure to take the other heirs into their confidence when a new arrangement was to be made is certainly open to very grave suspicion.

We think the jury were fully justified in reaching the conclusion which was recorded by their verdict, and that the circuit judge was not in error in holding that that verdict was not so clearly against the weight of the testimony as to justify setting it aside.

The judgment will be affirmed, with costs.

GRANT, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.